[Cite as *In re A.R.*, 2013-Ohio-236.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |  |
|---|---|---|---|
| IN THE MATTER OF: | : | JUDGES: | |
|  | : | Patricia A. Delaney, P.J. | |
|  | : | William B. Hoffman, J. | |
| A.R. | : | Sheila G. Farmer, J. | |
|  | : |  | |
|  | : | Case No. 2012 CA 00168 | |
|  | : |  | |
|  | : |  | |
|  | : |  | |
|  | : | O P I N I O N | |

CHARACTER OF PROCEEDING:          Civil Appeal from Stark County
Court of Common Pleas, Juvenile
Division, Case No. 2011 JCV 00025

JUDGMENT:          Affirmed

DATE OF JUDGMENT ENTRY:          January 14, 2013

APPEARANCES:

For Appellee-Stark County Dept. of          For Appellant-B.R.
Job and Family Services

JAMES B. PHILLIPS          DEAN L. GRASE
Stark County Department of          703 Courtyard Center
Job and Family Services          116 Cleveland Avenue N.W.
221 Third Street, S.E.          Canton, Ohio 44702
Canton, Ohio 44702

*Delaney, P.J.*

{¶1} Appellant, B.R., appeals a judgment of the Stark County Common Pleas Court, Family Court Division, awarding permanent custody of his daughter A.R. to appellee Stark County Department of Job and Family Services ("SCDJFS").

## FACTS AND PROCEDURAL HISTORY

{¶2} A.R. was born on January 3, 2011. On January 6, 2011, an emergency shelter care hearing was held and temporary custody was granted to SCDJFS. The concerns which gave rise to the filing of the complaint, alleging that A.R. was dependent and neglected, included issues of domestic violence between appellant and the child's mother and extensive past history between SCDJFS and A.R.'s mother. Appellant was determined to be the father of A.R. on February 1, 2011.

{¶3} Appellant and the child's mother stipulated that A.R. was a dependent child. The court adopted and approved a case plan and temporary custody of A.R. continued with SCDJFS.

{¶4} On May 21, 2012, appellant filed a motion to change legal custody of A.R. to his parents. He also filed a motion to extend temporary custody. In his motion, he suggested that SCDJFS use the extension of custody to implement services to reduce concerns regarding his parents and to allow his parents to continue to visit with A.R.

{¶5} SCDJFS filed a motion for permanent custody on May 22, 2012, which proceeded to an evidentiary hearing on August 14, 2012. Appellant was incarcerated during the majority of the case and failed to complete his case plan. At the permanent custody hearing he was homeless and admitted that he could not care for A.R.

Appellant stipulated to the grounds for permanent custody and the case proceeded to the best interest portion of the hearing.

{¶6} During the best interest hearing, SCDJFS presented evidence that the child had bonded well with her foster family and they desired to adopt her. The caseworker testified that visits with appellant's parents did not go well. While the grandmother behaved appropriately much of the time during the visits, she occasionally made comments concerning the foster parents' treatment of the child, as she believed A.R. was cranky and spoiled. The caseworker testified that A.R. was afraid of appellant's father, and on one occasion he left a visit because he was frustrated that A.R. cried and was fearful of him. She further testified that an evaluation of the paternal grandparents was completed with Northeast Ohio Behavioral Health and the evaluation did not recommend placing A.R. with appellant's parents. The guardian ad litem recommended that permanent custody be given to the agency because the child had bonded with the foster parents.

{¶7} Appellant testified that he had knowingly violated a no contact order with A.R.'s mother, and that his parents assisted him in covering up this violation. He testified that his mother believes the permanent custody case and his criminal history are not his fault and she blames others for his problems. He admitted that his mother does not know the entire story and if she did, her opinion might change. However, he wanted the child to be placed with his parents because he felt she should be with blood relatives.

{¶8} At the end of the hearing, appellant withdrew his motion to have legal custody changed to his parents. The court awarded permanent custody of A.R. to SCDJFS. Appellant assigns three errors on appeal:

{¶9} "I. THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES AS ITS FINDING THAT THE BEST INTERESTS OF THE CHILD WERE SERVED BY SUCH FINDING WAS CONTRARY TO THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶10} "II. APPELLANT SHOULD BE ENTITLED TO A NEW TRIAL BECAUSE HE WAS INEFFECTIVELY REPRESENTED AT TRIAL AS HIS COUNSEL'S PERFORMANCE FELL BELOW OBJECTIVE STANDARDS OF ADEQUATE REPRESENTATION AND SUCH INEFFECTIVE PERFORMANCE MATERIALLY AFFECTED THE APPELLANT'S ABILITY TO ACHIEVE A RELATIONSHIP WITH HIS CHILD.

{¶11} "III. THE TRIAL COURT ERRED IN FAILING TO FOLLOW THE DICTATES OF R.C. 2151.412 (F)(2)(b) BY FAILING TO SCHEDULE A HEARING ON PROPOSED CHANGES TO THE CASE PLAN REQUESTED BY APPELLANT'S ATTORNEY."

I

{¶12} Appellant argues the trial court's finding that permanent custody was in A.R.'s best interest is against the manifest weight and sufficiency of the evidence.

{¶13} It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody in the best interest of a child should

be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000) quoting *In re Awkal,* 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (1994).

{¶14} In determining the best interest of a child for purposes of a permanent custody disposition, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:

{¶15} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;

{¶16} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶17} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

{¶18} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶19} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶20} The trial court's finding that granting permanent custody of A.R. to SCDJFS was in her best interest was not against the manifest weight or sufficiency of

the evidence.    The caseworker testified that A.R. is a Caucasian child with no developmental delays or medical issues.  A.R. had been in the same foster home for 17 months and has developed a strong bond with the foster parents.  When separated from the foster parents to visit with the paternal grandparents, she would cry to the point where she choked or gagged herself.  Appellant had only visited with the child a few times and he had no bond with the child.  The foster parents wanted to adopt A.R.

{¶21} The caseworker further testified that visits with A.R. and the paternal grandparents had not gone well.  A.R. was afraid of appellant's father, and at one visit the grandfather stormed out of the visit because A.R. would not stop crying.  Appellant's mother made derogatory comments about the child being cranky and spoiled because of the foster parents.  While the grandparents passed the safety audit portion of a home study, SCDJFS had concerns about placing the child with them because they had placed an older grandchild with the grandparents, and the grandparents had later asked that the child be removed from their home.  The caseworker expressed concerns that the grandparents would not protect A.R. from the risk appellant posed to the child due to his history of domestic violence because they never held him responsible for his criminal actions.  The grandparents had covered up and supported appellant's violation of a no contact order between appellant and A.R.'s mother.  The paternal grandparents were evaluated by Northeast Ohio Behavioral Health and the recommendation was that the child not be placed with the grandparents.  Further, the guardian ad litem stated that she considered permanent custody to be in A.R.'s best interest.

{¶22} The first assignment of error is overruled.

II

**{¶23}** In his second assignment of error, appellant argues that his trial counsel was ineffective.

**{¶24}** Although this is not a criminal case, the Supreme Court of Ohio has characterized the termination of parental rights as the "death penalty" of parenting. Because of this characterization, this district has adopted the "criminal" standard to ineffective assistance of counsel arguments in permanent custody actions. *In re Fell,* Guernsey App. No. 05 CA 8, 2005–Ohio–5790; *In re Utt Children,* Stark App. No. 2003CA00196, 2003–Ohio–4576. A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

*APPELLANT'S TESTIMONY*

**{¶25}** Appellant first argues that counsel was ineffective by calling him to testify at the hearing. He argues that his testimony was damaging to his request that the child be placed with his parents.

**{¶26}** Appellant admitted on the stand that his parents assisted him in violating the no contact order, and that they did not hold him responsible for his criminal

activities. However, his testimony was merely duplicative of the testimony of the caseworker, who had already testified that appellant violated the no contact order and his parents covered for him and that appellant's parents did not recognize the risk appellant posed to A.R. or hold him accountable for his actions. Further, there was abundant evidence, as outlined in the first assignment of error that permanent custody of A.R. was in her best interest. Appellant has not demonstrated that had he not testified, the result of the hearing would have been different.

*GRANDPARENTS' TESTIMONY*

{¶27} Appellant also argues that counsel was ineffective for failing to call his parents to the stand to rebut his damaging testimony.

{¶28} Appellant and the caseworker had already testified that the grandparents covered up appellant's violation of the no contact order and that they did not believe appellant posed a risk to the child nor did they hold him responsible for his criminal actions. We do not know from the record that calling the grandparents to the stand would have rebutted this testimony, as they may have testified consistently with the prior testimony. Appellant cannot demonstrate that the outcome of the hearing would have been different had his parents testified.

{¶29} The second assignment of error is overruled.

III

{¶30} In his third assignment of error, appellant argues that the court failed to follow R.C. 2151.412(F)(2)(b) by not scheduling a hearing on his proposed changes to the case plan.

{¶31} R.C. 2151.412(F)(2)(b) provides:

{¶32} "(F)(2) Any party may propose a change to a substantive part of the case plan, including, but not limited to, the child's placement and the visitation rights of any party. A party proposing a change to the case plan shall file the proposed change with the court and give notice of the proposed change in writing before the end of the day after the day of filing it to all parties and the child's guardian ad litem. All parties and the guardian ad litem shall have seven days from the date the notice is sent to object to and request a hearing on the proposed change.

{¶33} "(b) If it does not receive a timely request for a hearing, the court may approve the proposed change without a hearing. If the court approves the proposed change without a hearing, it shall journalize the case plan with the change not later than fourteen days after the change is filed with the court. If the court does not approve the proposed change to the case plan, it shall schedule a hearing to be held pursuant to section 2151.417 of the Revised Code no later than thirty days after the expiration of the fourteen-day time period and give notice of the date, time, and location of the hearing to all parties and the guardian ad litem of the child. If, despite the requirements of division (F)(2) of this section, the court neither approves and journalizes the proposed change nor conducts a hearing, the agency may implement the proposed change not earlier than fifteen days after it is submitted to the court."

{¶34} Appellant did not file a proposed change to the case plan. In his motion to extend temporary custody, he asked SCDJFS to use this proposed extension of time to implement services to reduce the agency's concerns regarding the paternal grandparents and to allow further visitation with the grandparents. However, a

proposed change to the case plan was not filed and appellant did not make a request for a specific amendment to the case plan.

{¶35} Further, appellant's parents were not parties to the action. R.C. 2151.412 requires case plans to be prepared in cases involving a public children services agency. However, the statute references the term party throughout and does not require an agency to provide case plan services to a non-party.

{¶36} The trial court did not err in failing to comply with R.C. 2151.412(F)(2)(b).

{¶37} The third assignment of error is overruled.

{¶38} The judgment of the Stark County Common Pleas Court, Juvenile Division, is affirmed.

By: Delaney, P.J.

Hoffman, J. and

Farmer, J. concur

_____

_____

_____

JUDGES

PAD/r1219

[Cite as *In re A.R.*, 2013-Ohio-236.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN THE MATTER OF: | : |
| | : |
| A.R. | : |
| | : |
| | : |
| | :    JUDGMENT ENTRY |
| | : |
| | : |
| | : |
| | :    CASE NO. 2012 CA 00168 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to Appellant.

_____

_____

_____

JUDGES